Owens *v.* Pearce.

WM. B. OWENS and WIFE *v.* SAMUEL PEARCE, Ex., *et al.*

CHANCERY PLEADINGS AND PRACTICE. *Guardian. Answer.* A guardian, on being called to account in the chancery court, to be entitled to an allowance of expenditure greater than the income of his ward, must, in his answer, show such a state of facts as that a chancery court would have awarded such expenditure had application been made for such purpose.

FROM SULLIVAN.

Appeal from the Chancery Court at Blountville. W. D. HAYNES, Sp. Ch.

C. J. St. John and W. V. Deaderick for complainants.

C. R. Vance for defendant.

Freeman, J., delivered the opinion of the court.

John Roller died in February, 1868, leaving a will, appointing defendant, Samuel Pearce, his executor and testamentary trustee.

After providing for paying his debts, he directed all his personal property, and a lot in the town of Kingsport to be sold. By the fourth clause he provided: "That the expense of educating, clothing and raising my children, be attached to my estate in common." Fifth, "That my land be rented at the discretion of my executor for. the best interest of my estate, giving my children preference when capable of managing and farming the land. The proceeds after my debts are paid, to be funded for the benefit of my estate, except that my executor out of the rents may keep up the fences and ditches, and remove the barn and houses out of the Island to the south side of the river, and have them put up in good condition for me."

He then provides for prosecution of certain suits pending in which he was interested, and in eighth clause he says: "When my children have all arrived at twenty-one years of age, then my entire estate re-maining shall be divided equally between all my children." He then appoints Samuel Pearce executor, and authorizes him to do all acts and things necessary to carry out the provision of the will.

The testator left seven children, of whom complainant, Elizabeth, is the oldest—one having died since the testator. His estate was considerable—consisting of three tracts of land. Besides this there was a tract of land, which went to his children under the will of their grand-father, William Pearce, on the death of their father. This tract was owned by the children, and not subject to the trusts of the will, and will be further noticed hereafter. The executor was the uncle of the children, their mother having been his sister, and seems to have been the trusted friend of the father—and we take it a man of good estate—but himself childless.

The executor and uncle took the children to his house—probably a portion had made their home mainly at his house since the death of their mother, two years before their father, and seems to have provided for them comfortably, evidently, as we think is shown by the record, with no intent to charge board at all, but to give them a home in his childless family. This continued till this complainant provoked the ire of her uncle by marriage with her present husband, against whom he expressed the utmost dislike, claiming he was not the equal of his niece. The complainants, thereupon, desiring to get the use of the property of the wife, if possible, and being poor, filed this bill, charging, among other things, that the respondent, Pearce, had never made any settlement of his accounts as executor, or any showing as to his management of the estate, but refused to let complainant know anything as to the situation of the property, or make any settle-

ment with her and husband, in a word, had treated their applications in this respect, with contempt.

. They further charge that he had no rightful control over the Barilla Roller tract of land, and that he had taken charge of that with the estate of his testator, and refused to make any account of its rents and profits. They go on the theory, that under the will they were then entitled to have a full account of the estate and the share of complainant which the will set apart to her. As to the Barilla Roller tract, they seek a partition of the same, with account of rents. They charge that there was a large personal estate of their ancestor that went into the hands of the executor, and this is shown to be true, and insist they are entitled to be paid over their share of the personalty, with rents of realty, and to be put into possession after partition of the share of the wife, both of the Barilla Roller tract, and of the rest of the lands of the father. They pray for an account of the personalty and rents to this end, and for general relief.

The executor answers this bill, and zealously contests the question as to whether partition can be had of the Barilla Roller tract, and after much proof obtains a decree of reference for an inquiry on this question. The chancellor, however, held ultimately, it could be divided, and an account was also ordered as between complainants and defendant Pearce, as to rents of said land. Also an account of the amount of the personal estate, that had come into his hands from William Pearce's estate—it having been charged complainant was entitled to something from this source.

The account was solely as between the complainant and defendant, and such matters as might exist between them.    It settled no principle, however, or any other matter as to the general estate.    It was made in 1874. In 1875, on reviving this order, a general account of the estate of Roller was ordered, showing what property had come to his hands, what disbursements had been made, and that in ascertaining what amount was due to each heir, the clerk was to credit Pearce with all sums paid out for schooling, clothing, and other expenses of the children, and also a reasonable compensation for boarding them, and lastly, what would be a proper compensation to Pearce for his services as executor.

No adjudication was made, or could be made, as to the character or extent of the disbursements, at this time, as nothing was before the court on which it could decide the question.

The master under this decree made an elaborate report, which was excepted to in many of its conclusions, and at December term, 1878, a decree was made sustaining some of the exceptions, overruling others, and recommitting the matter to the clerk and master for a report in accord with the directions given in the decree.

From this decree, inadvertently probably, an appeal was granted to this court.    This court, however, took cognizance of the case and affirmed the decree of the chancellor, except it decreed that the executor is not required, and will not be, to make division of the lands or the rents accumulated, or personalty till the

youngest child came of age. The case was then re-
manded for taking the accounts ordered, and to be
further proceeded in.

In the court below, the case was re-referred to the
master, to take the account in exact accordance with
the decree of 1878, as affirmed by this court, and also
a direction to the commissioner to proceed with the
partition of the Barilla Roller land. The master made
several reports, which were excepted to, and at last
report, No. 3, as it is termed, was made, the result
of which shows a balance due the executor of $10,311.18
up to November 28, 1881, on which interest was al-
lowed up to the decree, and it was adjudged that this
amount was due from the estate of John Roller, de-
ceased, to Pearce, executor.

We need but say here, that this enormous debt is
largely made up of expense for boarding, schooling
and taking care of the wards of the testamentary
guardian. This result is so astounding that it deserves
to be looked into carefully, as it is evident that if sus-
tained, it presents the case of a testamentary guardian
taking charge of a fair estate, and in a period ex-
tending from January, 1868, to 1881—something over
twelve years, not only using all the income of their
estate, but creating a debt against them, that from
the proof in this record would absorb the entire es-
tate, and leave his wards in his debt, at the end of
his trust, when the youngest comes of age.

While the decree affirmed, and by fair inference
the original decree under which it was made, proba-
bly, entitles the party to compensation for board and

Owens v. Pearce.

expense of the education and support of the children, it does not settle the question, nor profess to do so, as to whether such credits should be allowed beyond the income of their estate in his hands. Indeed, this question could not have been adjudged in the first decree, as no such question was made in the answer, and we have held, that where a guardian is to be allowed expenditures over and above the income, on being called to account in a court of equity, he must show in his answer a state of facts warranting his trenching on the corpus of the fund, that is such a case as a court of equity would have ordered this done had an application been made to such court for that purpose. This is in accord with sound principle, the general rule being that the guardian is not so entitled, unless the case made is one that the expenditure would have been ordered by the court if applied to: See 3 Head, 91; 2 Lea, 152; Meigs Dig., by Milliken, vol. 2, secs. 1571–3–4.

If the question were not precluded by the decrees affirmed, it might well be doubted whether the defendant would not be repelled for all compensation for board, and it is pretty clear, this was intended to be a gratuity and not a debt, and the charge is now evidently insisted on by way of visiting his displeasure on complainant, Elizabeth, for what he deems her disobedient and improvident marriage. His answer exhibits this animus, when he says, that he took charge of the children and their estate with the kindest feelings—his object being to do for them all he could, and preserve for them as much of the estate

left them by their father, as possible, but that Elizabeth had run off from a comfortable home and married a man not her equal; therefore, his displeasure. He then claims to be reimbursed for taking care of Elizabeth, and schooling her up to her marriage, and these expenses he says, he *intends* to claim, not only from her, but the rest of said children, unless this respondent chooses to give the same to any of the children, and in this he will be governed by circumstances, and will give to such and in such amounts as he may hereafter choose.

In the light of the facts stated, the kindness expressed, and care of the estate proposed would seem to have but little foundation. It is no doubt his purpose to give to such children as he may choose, what of their estate he may be able to exact in this settlement, but inasmuch as he may die without executing his purpose—or may change his mind—it is hardly safe, judicially, to give him the entire estate, subject to his own will, when environed by such contingencies.

But to the case as it stands on the decree, on principle of strict law, and what is the result.

First, it is clear by the decree affirmed, complainants are entitled to a decree for their share of the Barilla Roller lands, as partitioned, and for their share of the rents, which have been ascertained; said decree distinctly forbids that this item shall be in any way complicated with the other matters of account. The chancellor, however, has appropriated the amount due from this source to the discharge of the share of

complainant's indebtedness found due from the general estate to the executor, and so he does the same, as to the share of the other children. In this he erred, and the decree will be reversed as to this matter, and a decree here in favor of the complainant, and the other children for this sum.

Second, The decree affirmed directs an inquiry between complainant and respondent, excluding the Barilla Roller land, showing what her share of the other estate would be, and what proper charges Pearce might have against her for board and education. This does not adjudge what those charges shall be. They can only be allowed in his favor to the extent of her share of the income of the estate of her father in the hands of the testamentary trustee—no reason whatever being shown in the answer or proof for trenching on the corpus of the funds.

The account for boarding and raising of the children had been recommitted to the clerk, because deemed by the chancellor exorbitant, no principle settled, however, as ought to have been done to guide the master as to extent of allowance.

Under this reference rightly there could only have been allowed such legal and proper expenditures, as could properly have been made. It certainly could not have been intended that any expenditure the trustee might have chosen to make should be allowed, and this would be the effect of the decree—if the exorbitant expenditures here decreed are permitted.

The decree allowing the ten thousand three hundred and eleven dollars will be reversed, and a re-

reference had, in which the account of expenditures of the children will only be allowed to the extent of the income of the estate of the children, or if the parties complainant are satisfied to do so, the account can be treated as balanced up to the time of making the report as to receipts and expenditures, as to the other children, and also of complainants, or an account can be had as to complainant alone on this basis.

The decrees allow compensation for services as executor, and as it was affirmed by this court it must be allowed, also from debts due from testator to executor.

The amount of compensation can be enquired into, if desired, for settling and administering the estate up to the expiration of the period for settlement, two years and a half from date of his appointment, and reasonable compensation allowed, though strictly, as he failed to settle as he should by law have done, he would not have been entitled, in all probability, to anything for his services, after that he held and administered the estate as testamentary trustee, and would be entitled to reasonable compensation for services, taking into account the size, income, and nature of the estate. We take it, however, that this account will be useless, as his claims on other matters will absorb all the income, if balanced, and there will be no use in going through the expense of such an account.

The decree affirmed directed that the complainants would be entitled yearly, either to rent the lands or

a share of them, or to be paid her share of the income annually—if not rented to them—out of rents received, and this was to be subject to future directions..

It was further held by this court, in construing the will, that the lands could not be divided, nor a decree had for the accumulated rents—if any—nor for any personalty, till the youngest child comes of age.

The case will be remanded to the chancery court to be proceeded in under this decree, and for annual settlements of the trust, or its proper administration under directions of the court until the youngest child comes of age.

The costs of this court and the court below not heretofore adjudged, will be paid by respondent Pearce.